## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RASHANE JONES,

        Petitioner,

v.                                                      Case No. 3:21-cv-440-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Rashane Jones, an inmate of the Florida penal system, initiated this action on April 19, 2021 (mailbox rule), by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1).[1] Jones is proceeding on an Amended Petition (Amended Petition; Doc. 5). He challenges a 2014 state court (Duval County, Florida) judgment of conviction for three counts of attempted second-degree murder and one count of possession of a firearm by a

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

convicted felon. Jones raises ten grounds for relief.[2] Respondents submitted a memorandum opposing the Amended Petition. See Answer to Amended Petition for Writ of Habeas Corpus (Doc. 10). They also submitted exhibits. See Docs. 11-1 to 11-45. Jones filed multiple replies. See Docs. 14, 25, 26. This action is ripe for review.

## II. Relevant Procedural History

On July 8, 2013, the state of Florida charged Jones by information with three counts of attempted second-degree murder (counts one, two, and three) and one count of possession of a firearm by a convicted felon (count four) stemming from Jones's actions on June 4, 2012. Doc. 11-1 at 32-33. Jones filed a motion to dismiss the information, and after a hearing, the trial court denied Jones's request. Id. at 57-58 (motion), 61 (order); Doc. 11-2 at 189-217 (hearing transcript). The state filed a notice of intent to offer evidence of other crimes, wrongs, or acts, which included evidence of, inter alia, Jones fleeing police approximately three weeks following the shooting. Doc. 11-1 at 49-50. The trial court held a hearing, at the conclusion of which, it found the evidence to be admissible. Doc. 11-2 at 89-179 (hearing transcript).

---

[2] In the Amended Petition, Jones initially raised seventeen grounds, but he voluntarily dismissed or withdrew Grounds Two, Three, Seven, Ten, Fifteen, Sixteen, and Seventeen. See Orders (Docs. 18, 24).

The case proceeded to a bifurcated jury trial—the attempted second-degree murder charges were tried first, followed by the felon in possession of a firearm charge. See Doc. 11-2 at 312-979; Doc. 11-3. The jury found Jones guilty as charged on all four counts. Doc. 11-1 at 330-36. The trial court sentenced Jones to thirty years on each of the attempted second-degree murder counts, with a twenty-year mandatory minimum, and fifteen years on the felon in possession count, with a three-year mandatory minimum with counts two through four to run consecutive to count one. Doc. 11-2 at 24-33 (judgment), 294-307 (sentencing transcript).

With help from appellate counsel, Jones filed a direct appeal. Doc. 11-6. The First District Court of Appeal per curiam affirmed Jones's convictions without comment, but reversed and remanded for resentencing based on a change in the law. Doc. 11-9. On remand, the trial court resentenced Jones to thirty-years imprisonment each on counts one, two, and three, with a twenty-year mandatory minimum on each count, and fifteen-years imprisonment on count four, with a three-year mandatory minimum to run concurrent with the mandatory minimum imposed on count one. Doc. 11-17. The trial court further instructed that the sentences on counts two, three, and four each run consecutive to the sentence on count one. Id. Effectively, Jones received the same term of incarceration as he did in the original sentence.

On July 5, 2016 (mailbox rule), Jones filed in state court a pro se petition alleging ineffective assistance of appellate counsel. Doc. 11-22. He subsequently filed an amended petition. Doc. 11-23. The state filed a response, Doc. 11-24, and Jones filed a reply, Doc. 11-25. On September 25, 2017, the First DCA per curiam denied the petition "on the merits." Doc. 11-26. The First DCA also denied Jones's request for rehearing. Doc. 11-27 (motion); Doc. 11-28 (order).

Jones filed a postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 on June 19, 2017, and several amendments. Doc. 11-35 at 6-159, 171-93. The postconviction court held an evidentiary hearing on certain grounds, id. at 287-416, and thereafter denied Jones's properly filed postconviction claims, id. at 230-55.[3] Jones appealed the postconviction court's denial of his Rule 3.850 motion, and filed an initial brief. Doc. 11-37. The state filed a response, Doc. 11-38, and the First DCA per curiam affirmed the postconviction court's denial without issuing a written opinion. Doc. 11-40.

The instant case followed.

---

[3] The postconviction court did not address Jones's third supplemental amended motion. Doc. 11-35 at 231-32 ("[T]his Court will not consider the enlargements on Defendant's timely raised claims contained in" the third supplemental motion filed on August 1, 2018, because Jones filed the third supplement after the postconviction court ordered the state to respond to certain grounds and Jones failed to obtain the court's leave to further amend his claims).

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318−19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Jones's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

8

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

> procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6]

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).

[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

[6] Murray v. Carrier, 477 U.S. 478 (1986).

> Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020); Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." Id. at 1130-31.[3] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. See id. at 1131. In order

14

> to establish prejudice, we must first review the merits of the omitted claim. <u>See</u> <u>id.</u> at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." <u>Id.</u>

<u>Philmore</u>, 575 F.3d at 1264. Thus, appellate counsel's performance is prejudicial if the omitted claim would have a reasonable probability of success on appeal. <u>Id.</u> at 1265.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Jones alleges his trial counsel was ineffective for entering a not guilty plea at arraignment without consulting him. Amended Petition at 5. He argues that his counsel failed to obtain his consent to enter the plea, "which resulted [in] her not holding the state to its burden of taking the grand jury process when filing informations, and further waiving legal and other constitutional rights." Id.; see also Doc. 14 at 2-16.

Jones raised a substantially similar claim in his Rule 3.850 motion. The postconviction court summarily denied the claim as follows:

> Defendant claims counsel was ineffective for entering a "not guilty" plea at arraignment without his consent. He contends that counsel did not consult with or speak to Defendant before entering a plea. Counsel's actions resulted in prejudice because she did not effectively reserve the right to attack the information's legal sufficiency on direct appeal. Defendant claims the plea lacked a proper basis because the State did not receive sworn testimony from a material witness prior to filing the information.

During arraignment, counsel told this Court that Defendant wanted to attack the legal sufficiency of the information prior to arraignment and reserved the right to bring that claim. Defendant insisted that counsel had "pled to the merits" without his consent because he sought to attack the information's sufficiency. This Court explained to Defendant that even if counsel stood silent and refused to enter a plea, the law required this Court to enter a "not guilty" plea on his behalf. Accordingly, even if Defendant had refused to enter a plea or pled evasively, this Court would have entered the same plea as counsel entered on Defendant's behalf. Fla. R. Crim. P. 3.170(c).

Defendant also was not prejudiced by counsel's actions because this Court ultimately found the information had a sufficient factual basis. Counsel filed a motion to dismiss the information on the ground that the State did not receive sworn testimony from a material witness. After a hearing, this Court denied the defense's motion:

> [B]ut rather looking to the merits of the motion under [Weinberg[7]] and other cases, the matters presented based upon the detective's testimony, the nature of his involvement in this case, the nature of his interviews, the substance of those witnesses, what he personally observed as it pertains to those identification statements, things of that sort, this Court finds sufficient to defeat the defendant's motion to dismiss.

Therefore, Defendant was not prejudiced by counsel's alleged failure to contest the information's sufficiency at arraignment.

---

[7] State of Florida v. Weinberg, 780 So. 2d 214 (Fla. 5th DCA 2001).

In addition, Defendant alleges prejudice in that counsel failed to preserve this issue for appeal. "[F]ailure to preserve issues for appeal does not show the necessary prejudice under <u>Strickland</u>." <u>Strobridge v. State</u>, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). Prejudice must be assessed "based upon its effect on the results of the trial, not on its effect on appeal." <u>Id.</u> (citing <u>Carratelli v. State</u>, 961 So. 2d 312,323 (Fla. 2007)). To the extent Defendant argues prejudice on direct appeal, such a claim does not have merit. Accordingly, this Court denies Ground Four.

Doc. 11-35 at 238-40 (internal record citations omitted). On September 25, 2020, the First DCA per curiam affirmed without opinion the postconviction court's denial, and on October 23, 2020, issued the mandate. Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that the First DCA decided this issue on the merits,[8] the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence

---

[8] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 584 U.S. at 128-30.

presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

Even if the state court's decision is not entitled to deference, the claim has no merit. Assuming, <u>arguendo</u>, Jones's trial counsel was deficient for entering a plea without discussing it with Jones, Jones has not shown prejudice. Under the Florida Rules of Criminal Procedure, even if Jones had refused to enter a plea at the arraignment, the trial court would have automatically entered a not guilty plea on his behalf. <u>See</u> Fla. R. Crim. P. 3.170(c) ("If a defendant stands mute, or pleads evasively, a plea of not guilty shall be entered."). Indeed, the trial court explained to Jones during the arraignment that the court would have entered a not guilty plea on Jones's behalf even if his lawyer had said nothing:

> THE DEFENDANT: I want to know - - she pled to the merits without my consent. I want to know if my rights are reserved to challenge that charge.

> THE COURT: Yes, sir. Your rights are reserved to challenge the legal sufficiency, to challenge the charge, all of that. Those are your rights that have been reserved. If there is something - - frankly, you can stand there and say nothing and your lawyer, but it has occurred in the past where the lawyer would stand there and acknowledge receive [sic] the information and say nothing and the court will enter a plea of not guilty on the defendant's behalf.

> So you will have ample time to talk to your lawyer if there is a legal basis to attack the sufficiency of the charges in the information filed, certainly there

> will be time to do that, to contest the charges. That is entirely what the judicial process is about.
>
> So you have not forfeited any of your rights and I'm expressly saying I've required the arraignment. She has tendered that plea and I'm reserving whatever rights are available to you under Florida law.

Doc. 11-2 at 59-60.

The entry of the not guilty plea did not prejudice Jones. Indeed, Jones's trial counsel filed a motion to dismiss the information, arguing that the state did not receive sworn testimony from a material witness prior to filing the information. See Doc. 11-1 at 57-58. Thus, counsel did challenge the information, even after entering a not guilty plea on Jones's behalf. And appellate counsel raised the issue on direct appeal. See Doc. 11-6 at 40-42 ("The trial court erred in denying Mr. Jones' motion to dismiss because the information was not based on the sworn testimony of a material witness."). Considering the record, the Court finds that Jones fails to show a reasonable probability exists that but for his counsel's alleged ineffectiveness, the outcome of the proceeding would have been different. As such, the Court denies relief on the claim in Ground One.

## B. Ground Four

As Ground Four, Jones maintains the trial court erred in admitting evidence about Jones assaulting and fleeing police weeks after the incident. Amended Petition at 10; <u>see</u> Doc. 14 at 17-21; Doc. 25.

Jones, with the assistance of appellate counsel, raised a substantially similar claim on direct appeal. <u>See</u> Doc. 11-6 at 32. Jones argued that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. <u>Id.</u> Jones further argued that "the evidence at trial failed to establish any nexus between Jones'[s] flight and the crimes for which he was being tried." <u>Id.</u> at 34. In making his arguments, Jones only cited to state law. <u>See id.</u> at 32-36. In its answer brief, the state argued that because trial counsel failed to object to this evidence at trial, the issue was not preserved for appeal. Doc. 11-7 at 20-21. Nevertheless, the state alternatively addressed the merits of the issue. <u>Id.</u> at 21-27. In doing so, the state cited some federal law in support of its arguments. <u>See id.</u> The First DCA affirmed Jones's convictions without comment. Doc. 11-9 at 2.

The appellate court may have affirmed Jones's convictions based on the state's merits argument. If the appellate court addressed the federal nature of Jones's claim on the merits, Jones would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA. After a careful review of the record and the applicable law, the Court concludes

that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jones is not entitled to relief on the basis of this claim.

Assuming this Court did not apply deference to the state court's adjudication and Jones exhausted the federal nature of this claim, the Court finds the claim has no merit. The trial court held a pretrial hearing to address the admissibility of this evidence. See Doc. 11-2 at 89-179. After hearing testimony from Morris McClendon and the three officers present during the incident involving Jones's flight, as well as considering argument from trial counsel and the state, the trial court ruled the evidence of Jones's flight was admissible at trial, reasoning as follows:

> The State of Florida, having considered the matters presented, the State of Florida will be permitted to present the evidence that is subject to the State's first notice of other crimes, wrongs or acts evidence filed December 4th, 2013, because, number one, to find such evidence the Court finds that such evidence is relevant to the subject of this case and, number two, to the extent necessar[y] the Court does find, by clear and convincing evidence, that sufficient evidence has been presented to establish that the defendant committed the acts that are the subject of the State's first notice.

Specifically, the Court has considered McClendon's testimony, not only within a vacuum and not only in the light of the fact that he has pending charges, his prior record, things of that sort, but in considering his testimony with that of the law enforcement officers who were present that day who were the subject of the conduct that they testified to, particularly, number one, that McClendon testified that the defendant was aware that these were law enforcement officers, by whatever pathetic jargon is used to identify his awareness but, number two, that McClendon's testimony is entirely consistent with the testimony of the law enforcement officers, both as to the defendant's conduct before he got into the car, looking in one law enforcement officer's direction, looking at another vehicle behind, looking back to the law enforcement officer and then jumping back into the vehicle, not only before he got into the vehicle, but while he was in the vehicle, the high rate of speed, the fast acceleration, the heading directly at cars that are on the road that are law enforcement officers, the running through stop signs, the being wrecked into another vehicle.

So you have his conduct consistent with McClendon's testimony, and McClendon's testimony he's aware of their presence and aware that they're looking for him, for whatever reason, a warrant or as a person of interest. McClendon's testimony is consistent with the defendant's conduct before he gets in the car, while he was in the car and after he gets out of the car there is immediate contact after 15 to 20 seconds, in a hastily and a hasty exit, for lack of a better word from the vehicle, all of those factors are consistent from amongst the law enforcement officers' testimony themselves from what they observed and they are - - and that is consistent with McClendon's testimony.

So the Court finds, frankly, I'm not entirely sure and I would question if it's <u>Williams</u> Rule, but that's

for another day, if it's not <u>Williams</u> Rule it certainly has relevance to the case if it - - and it's not simple character evidence for propensity purposes, which we all know is rankly inadmissible, but to the extent it is considered <u>Williams</u> Rule, the Court finds that clear and convincing - - that evidence has been presented to establish, by a clear and convincing burden of proof, that the defendant committed these acts that's relevant to the case, that is not excluded by 403, and I expressly considered that as well, and for the reasons stated the evidence subject to the notice will be admitted during the course of trial.

Doc. 11-2 at 176-79.

Although McClendon did not testify at trial,[9] three of the law enforcement officers present during Jones's flight did testify. <u>See</u> Doc. 11-3 at 50-77 (Douglas Howell, Jr.), 80-95 (James Brennock), 97-119 (Jim Walters). Sergeant Walters testified that after he used a PIT (precision intervention technique) on Jones's vehicle, Jones wrecked his car and eventually stopped. <u>Id.</u> at 108-09. Walters exited his vehicle along with the detectives riding with him, and they attempted to apprehend Jones while yelling, "Police, get down, police, get down, stop, stop, police," but Jones continued to try to struggle to "flee from [them]." <u>Id.</u> at 109.

---

[9] Mr. Moody, the prosecutor on Jones's case, testified at the postconviction evidentiary hearing that he did not call McClendon at trial because he had the testimony of the officers, Daryl Williams, and Jones's son's mother, and he "had made the determination at that point in time that there was more baggage than it was worth and [he] had better evidence" with Williams and Jones's son's mother. Doc. 11-35 at 351, 376.

Additionally, multiple eyewitnesses testified and identified Jones as the shooter. <u>See</u> Doc. 11-2 at 666-67 (Larry Andrews), 835-39 (Maurice Miller), 769-70 (James Russell). The state also presented evidence that Jones asked his son's mother to relay a message to another inmate, asking that inmate "to take some time." Doc. 11-3 at 196-200, 214. Further, the state presented testimony from Daryl Williams, an inmate at the jail, who said that Jones asked Williams to contact one of the victims (Larry Andrews), so Jones could ask Andrews if Andrews was going to testify against him. Doc. 11-3 at 129-32. According to Williams, Jones told him about the shooting and stated that if Andrews testified, Jones would "lose [at] trial." <u>Id.</u> at 133-34.

Insofar as Jones complains about the trial court's evidentiary rulings, "federal courts will not generally review state trial courts' evidentiary determinations." <u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1295 (11th Cir. 2014). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). "Habeas relief is warranted only when the error 'so infused the trial with unfairness as to deny due process of law.'" <u>Taylor</u>, 760 F.3d at 1295 (quoting <u>Lisenba v. People of State of California</u>, 314 U.S. 219, 228 (1941)). Here, the trial court's alleged error in admitting the evidence of

Jones's subsequent flight from police did not affect the fundamental fairness of Jones's trial. Considering the record, the Court finds Jones is not entitled to federal habeas relief on Ground Four.

### C. Ground Five

As Ground Five, Jones raises a <u>Giglio</u>[10] violation. Amended Petition at 52; <u>see</u> Doc. 14 at 21-34. He contends that the prosecutor knowingly used the false testimony of Morris McClendon to establish the nexus between Jones's flight from police and the subject shooting. Amended Petition at 52. He submits that the prosecutor knew McClendon lied during his pretrial testimony, and thus the prosecutor did not present McClendon as a witness at trial. <u>Id.</u> He also argues that his trial counsel was ineffective for failing to raise this <u>Giglio</u> violation. Doc. 14 at 29.

In his Rule 3.850 motion, Jones argued that his trial counsel was ineffective for failing to raise a <u>Giglio</u> violation. After holding an evidentiary hearing, the postconviction court denied the claim, reasoning as follows:

> Defendant claims counsel was ineffective for not challenging a <u>Giglio</u> violation. The prosecutor allegedly told defense counsel that the State would not call Morris McClendon ("McClendon") as a witness at trial because he gave false testimony at a pretrial hearing pursuant to <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959). Defendant argues that counsel should have moved to suppress McClendon's testimony. Defendant claims that if counsel moved to suppress

---

[10] <u>Giglio v. United States</u>, 92 S. Ct. 763 (1972).

McClendon's testimony, then the jury would not have heard evidence of Defendant's flight from law enforcement.

At the evidentiary hearing held on December 6, 2018, Defendant testified the prosecutor told defense counsel that McClendon would not testify at trial because he gave false testimony at a pretrial hearing. Defendant also claimed he never discussed his case with McClendon. Jeffrey Moody ("Mr. Moody") testified that he would not use false testimony, and he did not believe McClendon provided false information. Mr. Moody also stated he did not call McClendon as a witness at trial because he used other witnesses to demonstrate Defendant's consciousness of guilt. These witnesses did not have McClendon's "baggage," including felony convictions and prior inconsistent statements.

Regina Wright ("Ms. Wright"[11]) testified that she could not recall Mr. Moody making the alleged statement about McClendon. Ms. Wright did not know the reason for Mr. Moody's decision to not call McClendon as a witness during trial. However, she testified to investigating and deposing McClendon before the <u>Williams</u> Rule hearing. During the hearing, she questioned McClendon about his prior convictions and statements, as well as argued to this Court that it should discount McClendon's testimony due to his lack of credibility. The record confirms that Ms. Wright took these actions.

Having had the opportunity to observe the witnesses' demeanors and the manners in which they testified, in conjunction with the record, this Court finds Ms. Wright and Mr. Moody's testimony to be more credible and more persuasive than Defendant's testimony. Mr. Moody did not have any basis to believe McClendon gave false testimony and never told Ms.

---

[11] Ms. Wright was Jones's trial counsel.

> Wright that McClendon testified falsely at the pretrial hearing. Ms. Wright could not recall Mr. Moody making the alleged statement. Therefore, Ms. Wright had no basis to object on the basis that Mr. Moody offered false testimony. Counsel was not ineffective for failing to make a meritless argument. <u>Schoenwetter v. State</u>, 46 So. 3d 535, 546 (Fla. 2010). Accordingly, this Court denies Ground One.

Doc. 11-35 at 234-35 (internal record citations omitted). The First DCA per curiam affirmed without opinion the postconviction court's denial. <u>See</u> Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that Jones is now raising the same claim that he did in his Rule 3.850 proceeding[12] and the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

---

[12] Jones acknowledges that he raised this Ground in his Rule 3.850 motion but not on direct appeal. Amended Petition at 53.

Insofar as Jones is raising a freestanding <u>Giglio</u> claim, his claim is procedurally barred. Jones failed to raise such a claim in state court, and the time in which to do so has now passed. He has neither shown cause and prejudice to excuse his procedural default, nor has he shown a fundamental miscarriage of justice would result if the Court does not address his claim on the merits. As such, any freestanding <u>Giglio</u> claim is procedurally defaulted and due to be denied.

### D. Ground Six

As Ground Six, Jones alleges trial counsel was ineffective for failing to request a hearing pursuant to <u>Richardson v. State</u>, 246 So. 2d 771 (Fla. 1971),[13] with respect to the 911 call made by Maurice Miller. Amended Petition at 54; <u>see</u> Doc. 14 at 34-39. According to Jones, Miller testified during trial that he called 911 after running from the scene of the shooting. Amended Petition at 54. Miller's trial testimony was the first time that Jones became aware of the 911 call. <u>Id.</u>

Jones raised a substantially similar claim in his Rule 3.850 motion. The postconviction court summarily denied the claim as follows:

> Defendant alleges counsel was ineffective for failing to request a <u>Richardson</u> hearing. He claims Maurice Miller ("Miller") called law enforcement after

---

[13] "A <u>Richardson</u> hearing is a proceeding under Florida law by which a criminal defendant can challenge a discovery violation." <u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 64 F.4th 1264, 1272 (11th Cir. 2023).

the shooting. The recording of the call would demonstrate that Miller gave inconsistent descriptions of the shooter. Defendant contends counsel should have brought this Court's attention to the State's failure to comply with Florida Rule of Criminal Procedure 3.220. If counsel had requested a <u>Richardson</u> hearing, then the defense might have obtained the recording and used it to impeach Miller.

When a party does not comply with Florida Rule of Criminal Procedure 3.220, a court will hold a <u>Richardson</u> hearing to determine whether, considering the totality of the circumstances, a party's noncompliance has prejudiced its opponent. <u>Richardson</u>, 246 So. 2d at 775. Initially, a court considers whether a party violated a rule of discovery. <u>Cuny v. State</u>, 1 So. 3d 394, 397 (Fla. 1st DCA 2009). If a party violated a discovery rule, then a court evaluates the nature of the violation and any effect on the opposing party's preparation for trial. <u>Id.</u>

Counsel did not perform deficiently because she had no basis for requesting a <u>Richardson</u> hearing. At a hearing on August 19, 2014, counsel brought this Court's attention to Defendant's concerns about the existence of a recording. Counsel indicated that she previously requested the recording from the State, but law enforcement did not find a recording. The State also requested the recording from law enforcement and received a similar response. This Court accepted the State's assertions.

Defendant again referenced the recording at a hearing on August 20, 2014. This Court explained to Defendant that it addressed the matter during the August 19th hearing, and the recording would not provide "a basis . . . to delay or declare a mistrial or delay the trial further." In turn, counsel did not have a basis to request a <u>Richardson</u> hearing, since no evidence indicated that the State violated a discovery rule or law enforcement even had the recording.

Counsel did not perform ineffectively when she failed to pursue a meritless claim. <u>State v. Knight</u>, 866 So. 2d 1195, 1204 (Fla. 2003).

In addition, Defendant only assumes that Miller made a call to law enforcement during which he gave a description of the shooter that differed from his description of the shooter at trial. This Court will not grant Defendant postconviction relief based purely upon speculation. <u>Maharaj</u>, 778 So. 2d at 95. Accordingly, this Court denies Ground Eleven.

Doc. 11-35 at 246-47 (internal record citations omitted). The First DCA per curiam affirmed without opinion the postconviction court's denial. <u>See</u> Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

Assuming the state court's adjudication is not entitled to deference, as noted by the postconviction court and confirmed by the record, trial counsel had no basis to request a <u>Richardson</u> hearing. Thus, trial counsel cannot be

deemed ineffective for failing to do so. Regardless, even assuming trial counsel was deficient in the manner Jones suggests, Jones has not shown prejudice. He has not shown a reasonable probability exists that but for counsel's alleged ineffectiveness, the outcome of his trial would have been different. As such, the Court finds that Jones is not entitled to federal habeas relief on Ground Six.

## E. Ground Eight

As Ground Eight, Jones maintains trial counsel was ineffective for failing to file a motion to suppress the police report authored by Detective Haines, which stated that Jeffery Tyndal advised officers that he had information on a shooting. Amended Petition at 57; see Doc. 14 at 39-43; Doc. 26 at 1-12. According to Jones, "Tyndal's information was how the detective developed [the] photospread with [Jones's] photo in it." Amended Petition at 57.

In Jones's Rule 3.850 motion, he raised a substantially similar claim. The postconviction court denied it:

> Defendant argues counsel was ineffective for not filing a motion to suppress his Arrest and Booking Report ("Report"). The Report contained allegations that a detective interviewed Jeffery Tyndal ("Tyndal"), who stated that Defendant admitted to being involved in the shooting. Defendant argues that this information led law enforcement to create a photo spread that included Defendant's photograph. He also claims counsel should have investigated Tyndal's statement to determine if the information had been falsified by law enforcement. Defendant contends that

if counsel had filed a motion to suppress, then this Court would have granted the motion.

The record refutes Defendant's claim that counsel was deficient for not moving to suppress the Report. This Court initially notes that the State did not introduce the Report as evidence or call Tyndal as a witness at trial. Nevertheless, the interview with Tyndal did not provide the basis for law enforcement's photo spread. Detective Kevin Haines ("Detective Haines") testified that the initial photo spread shown to Miller did not include Defendant's photograph. After failing to identify anyone as the shooter, Miller told law enforcement that he recently learned the shooter's street nickname, "Tootie Boy." Law enforcement discovered through further investigation that Defendant identified as Tootie Boy and created a second photo spread that included Defendant's photograph. Therefore, Miller's information prompted law enforcement to include Defendant in the photo spread. Counsel did not have a basis to file a motion to suppress the Report or to investigate Tyndal. Banks v. State, 219 So. 3d 19, 26-28 (Fla. 2017) (determining that counsel was not ineffective for failing to raise a meritless motion to suppress). Accordingly, this Court denies Ground Thirteen.

Doc. 11-35 at 248-49 (internal record citations omitted). The First DCA per curiam affirmed without opinion the postconviction court's denial. See Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

Alternatively, Jones's claim has no merit. The state did not introduce the police report or call Tyndal as a witness at trial. At the trial, Detective Haines testified that during his investigation, Miller advised Haines that Miller had seen one of the shooters several days after the incident in the same area of the shooting; the individual was shooting a handgun in the air "kind of in a 'I'm here, come and get me if you want me' type of mentality." Doc. 11-3 at 284-85. Miller was also able to provide the nickname of the individual: "Tootie Boy." Id. at 285-86. With Miller's information, Haines was then able to identify Jones, and create a photospread including Jones's photo. Id. at 286.

Given the record, trial counsel was not ineffective for failing to file a motion to suppress the police report. The photospread including Jones's photograph was created from Miller's information, not Tyndal's information. Regardless, Jones has not established prejudice. He fails to show a reasonable probability exists that had counsel filed a motion to suppress, the outcome of his trial would have been different. The Court denies Ground Eight.

## F. Ground Nine

As Ground Nine, Jones alleges trial counsel was ineffective for failing to move for a mistrial after objecting to the state's inappropriate comment on Jones's appearance regarding his gold teeth. Amended Petition at 59; see Doc. 26 at 12-16.

In Jones's Rule 3.850 motion, he raised a substantially similar claim. The postconviction court denied the claim as follows:

> Defendant asserts counsel was ineffective for not moving for a mistrial based on improper closing arguments from the prosecutor. Specifically, he refers to the following comment:
>
>> I almost forgot. You want to talk about another action that speaks louder than words? You heard from James Russell. You saw the booking photo, the booking photo of this man. He goes into jail with gold teeth. You want to talk about actions speaking louder than words? He stood before you. He's been here all week. This man pulled the gold teeth right out of his mouth not to look like this.
>
> Defendant claims that if counsel had moved for a mistrial based on the above comment, then this Court would have granted the motion.
>
> Where a defendant alleges counsel was ineffective for failing to move for a mistrial, in order to satisfy the prejudice prong of Strickland, a defendant must demonstrate that the trial court would have granted a motion for mistrial. Middleton v. State, 41 So. 3d 357, 360 (Fla. 1st DCA 2010). "A motion for mistrial should be granted only when the error is

deemed so prejudicial that it vitiates the entire trial, depriving the defendant of a fair proceeding." Floyd v. State, 913 So. 2d 564, 576 (Fla. 2005).

Counsel's failure to move for a mistrial did not prejudice Defendant because this Court would not have granted such a motion. The prosecutor's comment "did not permeate the closing argument." Smith v. State, 818 So. 2d 707, 711 (Fla. 5th DCA 2002); see also Simpson v. State, 3 So. 3d 1135, 1146-47 (Fla. 2009) (determining that improper comments were brief and did not constitute fundamental error). The prosecutor made this comment at the end of his rebuttal to defense counsel's closing arguments. Further, this Court instructed the jurors that closing arguments do not constitute evidence or instruction on the law. In conjunction with the significant evidence against Defendant, including three victims who identified Defendant as the shooter, this Court would not have a basis for granting a mistrial. Accordingly, this Court denies Ground Sixteen.

Doc. 11-35 at 253-54 (internal record citations omitted). The First DCA per curiam affirmed without opinion the postconviction court's denial. See Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence

presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

Alternatively, the Court addresses Jones's claim on the merits. "The statements of a prosecutor will justify reversal of a conviction if they undermined the fairness of the trial and contributed to a miscarriage of justice. Furthermore, a prosecutor's statements during closing argument require reversal only if the comments are both improper and prejudicial to a substantial right of the defendant." United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992) (internal quotations and citations omitted).

After the prosecutor made the statements as quoted above regarding Jones's gold teeth, Jones's trial counsel objected. Doc. 11-3 at 676 ("I'm going to object to that as improper and not in evidence."). At a sidebar with the trial judge, the prosecutor described the witness testimony on which his statement relied: "James Russell specifically testified in his examination, either in direct - - I think it was during my direct or it was - - 'cause I asked him if he had gold teeth, and his answer was, yeah, Tootie pulled them all out while he was in jail . . . ." Id. at 677. The trial judge overruled trial counsel's objection. Id.

During his direct examination, Russell testified that at the time of the shooting, Jones had gold teeth. Doc. 11-2 at 777-78. Russel clarified, "He ain't got no teeth right now. He had some gold teeth in his mouth" at the time of the

shooting. Id. at 778. Russell did not specifically testify that Jones pulled out his gold teeth.

Despite the prosecutor's somewhat mischaracterized explanation of Russell's testimony, the Court finds that the prosecutor's comments on Jones's appearance did not undermine the fairness of the trial or contribute to a miscarriage of justice. There was testimony presented that Jones had gold teeth at the time of the shooting and the state admitted into evidence a booking photo from around the time Jones was apprehended by police, which also showed that he had gold teeth. See Doc. 11-3 at 301-02. Then at trial, Jones did not have gold teeth. The prosecutor's statement during closing argument was a fair comment on the evidence presented. Additionally, the trial judge instructed the jury that what the lawyers say is not evidence and the jury is required to base its verdicts solely on the evidence presented during the trial. See Doc. 11-3 at 599, 694, 700. Considering the record, the Court finds that trial counsel was not ineffective for failing to move for a mistrial after the trial court overruled her objection. Accordingly, Jones is not entitled to federal habeas relief on Ground Nine.

## G. Ground Eleven

As Ground Eleven, Jones alleges appellate counsel was ineffective for failing to raise on direct appeal a claim of prosecutorial misconduct and trial counsel's ineffective assistance for failing to object to the prosecutor's

inappropriate comments. Amended Petition at 63; see Doc. 26 at 16-17 (arguing that appellate counsel should have raised trial counsel's ineffectiveness because it was apparent from the record). Jones contends that the prosecutor asked Detective Haines, a state witness, "to comment on" the work of defense witness Detective McClain. Amended Petition at 63. Specifically, the prosecutor said, "Would you agree with me as a lead detective for 13 years, that probably the 'DUMBEST' thing you could ever do is try and write a report going by memory alone?" Id. According to Jones, the prosecutor was attacking McClain's character before McClain even took the stand. Id. Additionally, Jones complains that the prosecutor attacked McClain's character through his cross-examination of Detective Overholser, another defense witness, and then through cross-examination of Detective McClain himself. Id.

In Jones's pro se petition alleging ineffective assistance of appellate counsel, he raised a substantially similar issue with respect to appellate counsel's alleged ineffectiveness for failing to raise the issue of prosecutorial misconduct. Doc. 11-23 at 38-44.[14] The state responded on the merits. Doc. 11-

---

[14] Jones did not present argument to the state court regarding appellate counsel's alleged ineffectiveness for failing to raise an ineffective assistance of trial counsel claim with respect to this issue. See Doc. 11-23 at 38-44. Because Jones failed to present this issue to the state court, his claim is unexhausted and procedurally barred. Nevertheless, the claim has no merit because Jones fails to show prejudice.

24 at 30-37. Jones filed a pro se reply. Doc. 11-25 at 23-24. The First DCA per curiam denied the petition "on the merits." Doc. 11-26 at 2.

Because the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Preliminarily, the Court notes that Jones's appellate counsel had no duty to raise every non-frivolous issue on appeal, and it was reasonable for counsel to weed out weaker arguments. See Overstreet, 811 F.3d at 1287. To overcome the presumption that appellate counsel was effective, Jones must demonstrate that appellate counsel ignored issues that were clearly stronger than those presented. See id. In addition, Jones must show a reasonable probability that, but for the deficient performance, the outcome of the appeal would have been different. See Black, 373 F.3d at 1142.

Jones's appellate counsel challenged his convictions and sentences on eight grounds, including that the trial court erred in admitting certain evidence and allowing the state to insinuate a defense witness was a member of an inmate gang when the state failed to prove that impeaching fact, as well as erred in denying Jones's motion to dismiss and in sentencing Jones. See Doc. 11-6 at 3. For the reasons that follow, the First DCA's decision is not an

He has not shown that had appellate counsel raised such a claim, there exists a reasonable probability of success on appeal.

unreasonable application of <u>Strickland</u> because appellate counsel could have weeded out the issues about which Jones now complains as weaker or meritless,[15] and it is not reasonably probable that these issues would have succeeded on appeal.

First, Jones's trial counsel did not object to several of the prosecutor's comments with which Jones takes issue. Indeed, defense counsel did not object when the prosecutor asked Detective Haines to comment on Detective McClain's work, <u>see</u> Doc. 11-3 at 334-35, or when he asked Detective Haines: "And would you also agree with me, as a lead detective for 13 years, that probably the dumbest thing you could ever do is try and write a report going by memory and memory alone?" Doc. 11-3 at 338. Because trial counsel did not object, the issues were not preserved for appeal and do not present an issue of fundamental error. Thus, appellate counsel cannot be deemed ineffective for failing to raise issues that were not preserved.

Second, as to the prosecutor's cross-examination of Detective Overholser, trial counsel lodged several objections, all of which were sustained except one. <u>See</u> Doc. 11-3 at 482-88. The one objection that the trial court overruled stemmed from the following exchange between the prosecutor and Detective Overholser:

---

[15] Jones indicates that he notified his appellate counsel of these issues, but appellate counsel refused to raise the issues. Doc. 11-23 at 39.

> Q      The consensus description given of the person shooting was a black male in his mid 20s with gold teeth, five-eight inches tall and had a baseball cap. That sound right?
>
> A      Well, with the gold teeth consensus - - because I think there was several people that he had spoken to as well as what I had given him as a description based on the person that I spoke with.
>
> Q      So you think the gold teeth - -
>
> > [Trial Counsel]: I'm going to object to that. . . . Hearsay. He has no personal knowledge.
> >
> > THE COURT: Let me hear the question first. Go ahead.
>
> . . . .
>
> Q      So to clarify what I was trying to get to is you just said Detective McClain put in his notes gold teeth because of people he spoke with, not because of people you spoke with.
>
> A      Correct.
>
> > THE COURT: The objection's overruled.

Doc. 11-3 at 482-83. Jones fails to explain how this line of questioning violated his federal constitutional rights. And given that the trial court sustained the remainder of trial counsel's objections on the subject testimony, there was nothing for appellate counsel to argue on appeal. Thus, appellate counsel cannot be deemed ineffective for failing to raise an issue on direct appeal based on the prosecutor's examination of Detective Overholser.

42

Third, Jones challenges the prosecutor's cross-examination of Detective McClain. Amended Petition at 63. In his state court habeas petition, Jones referred to the prosecutor's line of questioning as "improper, insulting, and unprofessional." Doc. 11-23 at 40. Jones specifically pointed to the following exchange:

> Q     Would you find it interesting to know that Detective Overholser just said that he never heard gold teeth; you must have got that from someone else?
>
> > [Trial Counsel]: Your Honor, I'm going to object.
> >
> > THE COURT: Overruled.
> > Did you need to state an initial ground?
> >
> > [Trial Counsel]: Mischaracterization of what Detective Overholser said.
> >
> > THE COURT: Overruled.

Doc. 11-23 at 40 (quoting Doc. 11-3 at 502). Jones fails to show how the prosecutor's cross-examination of Detective McClain violated Jones's federal constitutional rights. Thus, there was no issue for appellate counsel to raise on direct appeal.

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of Jones's ineffective assistance of appellate counsel claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was

not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

## H. Ground Twelve

As Ground Twelve, Jones alleges his appellate counsel was ineffective for failing to raise a claim of prosecutorial misconduct with respect to the prosecutor "coaching the jurors as to what crime to find [him] guilty of." Amended Petition at 64; see Doc. 14 at 44-49; Doc. 26 at 19-21.

In the prosecutor's closing argument, he summarized the facts for the jury, the instructions that the trial judge would provide, and then he applied the facts to the law as viewed by the state. See Doc. 11-3 at 600-04, 609-21, 660-78. In discussing the lesser-included offenses, the prosecutor stated:

> As you know, the State of Florida has charged Mr. Jones with three separate counts of attempted second-degree murder. But what you guys are going to hear is that's not the only charge you're going to hear from the judge because basically whenever we have trials, there are things called "lesser-included crimes." And they're kind of like a ladder. You work your way up. You have - - in this situation you're going to have, if I remember correctly, the first prong down on the ladder is attempted voluntary manslaughter. Second will be aggravated battery. And then third, you work your way up to attempted second-degree murder.
>
>     . . . .
>
> This, where two people run out on the street and open fire nine, ten times, hitting three different

44

<u>people, this is not manslaughter. This is attempted</u>
<u>murder.</u>

If you work you way up the ladder, the other way to look at it, too, is the next one you're going to hear about is aggravated battery. Okay?

. . . .

<u>It speaks for itself. All you have to do is figure</u>
<u>out whether or not you believe he's the one who did it.</u>
<u>We're not talking about - - this isn't an attempted</u>
<u>manslaughter case. This isn't an aggravated battery</u>
<u>case. It's all or nothing, ladies and gentlemen. You</u>
<u>either believe that he was one of those shooters that</u>
<u>night or you walk him. That's what it comes down to.</u>

Doc. 11-3 at 613-14, 616, 621 (emphasis added to highlight the statements specifically challenged by Jones).

In Jones's petition alleging the ineffective assistance of appellate counsel, he raised a substantially similar claim, arguing that his appellate counsel was ineffective for failing to raise on direct appeal a claim of prosecutorial misconduct based on the state's closing argument. The state responded, arguing that appellate counsel was not ineffective for failing to raise a nonmeritorious claim, <u>see</u> Doc. 11-24 at 37-38, and Jones replied, <u>see</u> Doc. 11-25 at 24-26. The First DCA per curiam denied the petition "on the merits." Doc. 11-26 at 2.

This Court applies AEDPA's deferential standard of review of state court adjudications to the First DCA's decision. A review of the prosecutor's closing

argument reflects that he argued the state's position and asserted the state's view that the evidence showed Jones was guilty of attempted second-degree murder. The prosecutor's closing argument, considered on the whole, did not warrant an objection, and as such, appellate counsel was not ineffective for failing to raise on direct appeal a claim of prosecutorial misconduct with respect to the closing argument.

Upon review of the record and the applicable law, the Court concludes that the state court's adjudication of Jones's ineffective assistance of appellate counsel claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

## I. Ground Thirteen

As Ground Thirteen, Jones alleges trial counsel was ineffective for failing to object at trial to the admission of evidence of his flight from law enforcement. Amended Petition at 65; see Doc. 26 at 21-25. He recognizes that trial counsel filed a pretrial motion seeking to exclude this evidence, but then trial counsel failed to object when the state admitted this evidence at trial without establishing a nexus between the attempted murders and Jones's subsequent fleeing from law enforcement such that the jury could infer consciousness of

guilt. See Amended Petition at 65. Specifically, Jones contends that at the pretrial hearing, the trial court found that witness Morris McClendon's testimony provided the nexus between the flight and the attempted murders. Doc. 26 at 22-23. McClendon, however, did not testify at trial; thus, Jones argues that the nexus was not present and counsel was ineffective for failing to object on that basis. Id.

Jones raised a substantially similar claim in his Rule 3.850 motion. The postconviction court denied it, reasoning as follows:

> Defendant contends counsel was ineffective for not objecting to the admission of evidence that Defendant fled from law enforcement several days after the shooting. Counsel's inaction resulted in prejudice because, by failing to object at trial, she waived the issue for appellate review.
>
> A defendant's claim that counsel failed to preserve an issue for appeal does not demonstrate sufficient prejudice.[] Strobridge, 1 So. 3d at 1242. Rather, counsel's actions must affect a defendant's trial, not his or her appeal. Id. A failure to object may amount to prejudice at trial, where, "if the issue had been properly challenged at trial, the . . . court could have ruled appropriately" and cured any prejudice. Id. at 1243.
>
> Here, counsel's inaction did not prejudice Defendant. Prior to trial, this Court held an extensive hearing on the issue and ruled that evidence of Defendant's flight from law enforcement was admissible. Even if counsel had objected at trial, no prejudice occurred because this Court would not have changed its ruling at trial. Further, counsel requested that this Court read the Williams Rule instruction,

which directed the jury to consider the evidence "for the limited purposes of establishing the defendants [sic] consciousness of guilt." Counsel objecting to the evidence's admission during trial likely would not have changed the trial's outcome. Accordingly, this Court denies Ground Five.

Doc. 11-35 at 240-41 (internal record citations omitted). The First DCA per curiam affirmed without opinion the postconviction court's denial. See Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

Even if this Court did not defer to the state court's adjudication, Jones's claim has no merit. Prior to trial, the trial court held a hearing on the state's notice of other crimes, wrongs, or acts which advised of Jones's attempt to flee from law enforcement officers approximately three weeks after the shooting. See Doc. 11-2 at 89-179. After hearing testimony and considering the parties'

arguments, the trial court specifically found that the evidence was admissible at trial. Id. at 176-79. When the law enforcement officers testified at trial regarding Jones's flight, defense counsel asked the trial judge for a sidebar so that she could request the trial judge instruct the jury regarding this testimony. Doc. 11-3 at 62-63. The trial judge did so:

> [T]he evidence you have just received from the testimony of Detective Doug Howell as to other crimes, wrongs or acts allegedly committed by the defendant will be considered by you for the limited purpose of establishing the defendant's consciousness of guilt, and you shall consider it only as it relates to that issue. However, the defendant is not on trial for a crime, wrong or act that is not included in the information.
>
> That instruction applies not only to the testimony of Detective Doug Howell but also to the testimony of Detective James Brennock and Detective Jim Walters, when offered by the State of Florida.

Id. at 78-79. Then again, in the trial court's final instructions to the jury, it stated: "The evidence which has been admitted in this trial to show other crimes, wrongs or acts allegedly committed by the defendant will be considered by you only as that evidence relates to proof of flight of the defendant having a consciousness of guilt." Id. at 697-98. The evidence highlighted in Ground Four supra shows that there was sufficient evidence presented at trial that would allow the jury to infer Jones's consciousness of guilt.

Even if trial counsel had objected at trial, the state could have called McClendon as a witness, and the jury would have heard McClendon's negative

testimony about Jones. Although trial counsel had grounds to attack McClendon's credibility, as she did at the pretrial hearing, the jury still would have heard McClendon's testimony that Jones told him he knew law enforcement wanted to question him about the shooting and that is why Jones fled. At the evidentiary hearing in Jones's Rule 3.850 proceeding, trial counsel testified that her strategy with respect to the "flight evidence" was the same with or without McClendon testifying at trial—her argument was that Jones did not know the individuals chasing him were police officers. See Doc. 11-35 at 335; see also id. at 316 ("But our whole theory was that you didn't know they were police, so you couldn't have been running from them as consciousness of guilt because you didn't know who they were in the first place.").

Considering the record, the Court finds that counsel was not ineffective for failing to object at trial. And even if she was, Jones fails to show that the admission of this evidence prejudiced him in light of all the other evidence of his guilt, including eyewitness testimony from three individuals. Moreover, on direct appeal, Jones, through appellate counsel, argued that the trial court erred by admitting this evidence. See Doc. 11-6 at 32-36. The state initially argued that the issue was not preserved, but also addressed the claim on the merits. See Doc. 11-7 at 20-27. Considering the record, the Court denies federal habeas relief on Ground Thirteen.

## J. Ground Fourteen

As Ground Fourteen, Jones maintains trial counsel was ineffective for failing to depose and properly interview the state's key witness, Maurice Miller. Amended Petition at 67; see Doc. 26 at 25-28.

In Jones's Rule 3.850 motion, he raised a substantially similar claim. The postconviction court denied it:

> Defendant contends counsel was ineffective for not deposing Maurice Miller ("Miller"). Although counsel interviewed Miller before trial, she did not take a formal deposition. Defendant alleges that if counsel had deposed Miller, then she would have discovered that Miller called law enforcement immediately after the shooting and saw Defendant involved in another incident with a firearm several days after the shooting. If the defense had been aware of this information prior to trial, then counsel could have obtained the recording of Miller's call, as well as prevented the jury from hearing any testimony about the firearm incident.
>
> Reasonable strategic or tactical decisions by counsel do not constitute ineffective assistance of counsel. Thompson v. State, 174 So. 3d 453, 456 (Fla. 1st DCA 2015). While a court generally must conduct an evidentiary hearing to determine whether counsel's decisions derived from strategy, when the record reveals that counsel made strategic decisions, a court need not conduct an evidentiary hearing. State v. Williams, 797 So. 2d 1235, 1239 (Fla. 2001) (quoting McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984)).
>
> Here, the record demonstrates that counsel made a conscious and strategic decision to proceed with Miller's interview. During trial, Defendant

brought this Court's attention to his claim that counsel was ineffective for interviewing, but not deposing, Miller. Counsel conceded that she did not conduct a deposition of Miller. She did interview Miller prior to trial, and counsel, as a result, learned the substance of Miller's potential testimony. At various times before trial, counsel subpoenaed Miller. However, he could not attend these depositions. Counsel scheduled Miller's deposition on the day of his interview, but the court reporter unexpectedly could not attend the appointment. She told Defendant about these events, and counsel ultimately decided to interview Miller because of Defendant's desire to proceed with trial. Therefore, counsel made a considered decision to proceed without Miller's deposition in order not to delay trial.

Assuming <u>arguendo</u> counsel performed deficiently, Defendant was not prejudiced by counsel's actions. Counsel indicated that Miller's testimony did not depart from the substance of his interview, only as to the location of gold teeth in the shooter's mouth. Further, while Defendant claims that counsel would have discovered the existence of a 911 call during a deposition, she would not have been able to obtain the recording. Counsel previously requested the recordings of Miller's call from the State, but law enforcement did not find any recordings.

Lastly, even if a deposition had revealed that Miller would testify to another incident involving Defendant, this Court would have denied a motion in limine from counsel. During trial, counsel objected to the relevancy of Miller's testimony about witnessing Defendant brandish a firearm several days after the shooting. This Court ruled that it had relevance "for the purpose of the weight to be afforded the witness's identification of the defendant as the shooter." Miller's testimony "as to the details by which [he] observed the defendant four or five days later" also proved relevant "to the nature or cause of the observation." Defendant

> was not prejudiced by counsel's failure to depose Miller because even if counsel had moved to exclude Miller's testimony about the firearm incident, this Court would not have granted such a motion. Accordingly, this Court denies Ground Ten.

Doc. 11-35 at 244-46 (internal record citations omitted). The First DCA per curiam affirmed without opinion the postconviction court's denial. See Doc. 11-40 at 2; Doc. 11-41 at 2.

To the extent that the First DCA decided this issue on the merits, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Jones is therefore not entitled to relief on the basis of this claim.

Alternatively, even assuming trial counsel was deficient for not deposing Miller prior to trial, Jones fails to show prejudice. Considering the record, Jones fails to show a reasonable probability exists that had his counsel deposed Miller prior to trial, the outcome of his trial would have been different. As such, the Court denies Ground Fourteen.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Jones seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jones "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 5) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Jones appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of September, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

JAX-3 9/24
c:
Rashane Jones
Counsel of Record